JUDGE BUCHWALD

'08 CIV 7157

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

OCEAN PRIDE CO. LTD.                         :

           Plaintiff,                          :

- against -                                  :

WORTHINGTON SHIPPING CORPORATION             :
a/k/a WORTHINGTON BULK LIMITED               :
                                             :
           Defendant.                          :

------------------------------------------------X

08 CV ___ AUG 1 1 2008

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, OCEAN PRIDE CO. LTD. (hereinafter "Ocean Pride" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, WORTHINGTON SHIPPING CORPORATION a/k/a WORTHINGTON BULK LIMITED (hereinafter "Worthington" or "Defendant") alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.    At all times material to this action, Ocean Pride was, and still is, a foreign corporation, or other business entity organized and existing under the laws of the Republic of Malta.

3.    Upon information and belief, Worthington was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Bermuda.

4.    At all times material to this action, Ocean Pride was the owner of the motor vessel "M/V OCEAN D" (hereinafter "the Vessel").

5.     By a New York Produce Exchange Form time charter dated December 29, 2006

(hereinafter "the charter party"), Ocean Pride time chartered the Vessel to Worthington for a period

of minimum three months to maximum four months plus/minus 5 days in charterer's option via safe

port(s)/safe berth(s)/safe anchorage(s), for South America Coastal Trading between safe ports and

places within the British Institute Warranty Limits, always excluding Columbia. *A copy of the*

*charter party is attached hereto as Exhibit "1".*

6.     Ocean Pride delivered the Vessel into the service of Worthington and has at all times

fully performed its duties and obligations under the charter party.

7.     The charter party provided for hire at the rate of $16,500 pro rata per day,

commencing on and from the day of delivery of the Vessel and at and after the same rate for any

part of a day, continuing until the hour of the day of redelivery.  *See Exhibit 1*

8.     Pursuant to the terms of the charter party, the Vessel was ordered to proceed to

Vitoria to discharge cargo. While discharging cargo at Vitoria, it was discovered that the cargo in

hold number 3 was damaged due to oil contamination. The Vessel was delayed while the damaged

cargo was discharged.

9.     Clause 47 of the charter party provides, *inter alia*, that should the Vessel be detained

by any legal authority or by any legal process during the currency of the charter party for any reason

attributable to the Owners, the payment of hire shall be suspended until the time of her release, in

case vessel's operations are not affected, then vessel to remain on hire. *See Exhibit 1.*

10.     Pursuant to Clause 47, Ocean Pride placed the Vessel off hire during the period of

time when the Vessel's cargo operations were affected due to delays and arrest of the Vessel by the

cargo receivers due to the cargo contamination.

11.    Disputes later arose between the parties regarding the amount of time the Vessel was off hire under the terms of the charter party. Specifically, Worthington has improperly over deducted time off hire in the amount of 2.868 days.

12.    Worthington currently owes Ocean Pride hire for this period of 2.868 days as the Vessel was not properly off hire during this time under the terms of the charter party. At the hire rate of $16,500 per day, this amounts to a total sum due and owing from Worthington to Ocean Pride under the charter party of $47,322.

13.    In addition, under the terms of the charter party, Pacific Ocean is owed the sum of $4,552.95 for marine diesel oil consumed during these 2.868 days when the Vessel was properly on hire.

14.    Additionally, while the Vessel was at Neuva Palmira on a subsequent voyage, the Vessel's crane number two became jammed in the top sheaves amounting to an inoperable, unsafe and dangerous condition. The damage to the crane was caused by the negligent operation of the crane by the Vessel's stevedores. Under the terms of the charter party, Worthington is responsible for the costs and repairs associated with the crane damage amounting to $137,135.07.

15.    Despite due demand from Ocean Pride, Worthington has failed and/or refused to pay outstanding hire in the amount of $47,322, outstanding marine diesel oil consumption in the amount of $4,552.95 and $137,135.07 for expenses associated with the crane damage.

16.    To date, Worthington has withheld payments totaling $189,010.02 in breach of the terms of the charter party.

17.    Worthington has breached the terms of the charter party by refusing and/or failing to pay outstanding payments due and owing to Ocean Pride under the terms of the charter party.

18.    Pursuant to the charter party, disputes between the parties are to be submitted to

arbitration in London with English law to apply. Ocean Pride has commenced arbitration against Worthington.

19.    This action is brought in order to obtain jurisdiction over Worthington and also to obtain security for Ocean Pride's claims and in aid of London arbitration proceedings.

20.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

21.    As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| a. | Principal Claim: | $189,010.02; |
| | *Outstanding hire, marine diesel oil consumption and crane damages* | |
| b. | Interest for 2 years, compounded quarterly at 7%: | $ 28,140.14; |
| c. | Estimated arbitration costs: | $ 9,500.00; |
| d. | Estimated recoverable legal fees and costs: | $100,000.00; |
| **Total:** | | **$326,650.16** |

22.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "2".*

23.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any proeprty of the

4

Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $ **326,650.16** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.    That this Court enter Judgment against Defendant on the claims set forth herein;

E.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.    That this Court award Plaintiff its attorney's fees and costs of this action; and

G.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: August 11, 2008
New York, NY

> The Plaintiff,
> OCEAN PRIDE CO. LTD.
>
> By: _Anne C. LeVasseur_
>
> Patrick F. Lennon
> Anne C. LeVasseur
> LENNON, MURPHY & LENNON, LLC
> 420 Lexington Ave., Suite 300
> New York, NY 10170
> (212) 490-6050 – phone
> (212) 490-6070 – fax
> pfl@lenmur.com
> acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                     )    ss.:    Town of Southport.
County of Fairfield  )

1.    My name is Anne C. LeVasseur.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          August 11, 2008

                          Anne C. LeVasseur
                          Anne C. LeVasseur

# EXHIBIT 1

Aug. 11. 2008  3:43PM    London, Murphy & Lennon LLP                    No. 0376    P. 34



Copyright © 1981 and Published by: The Association
of Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York.
This derivative work may not be copied without
the permission of the copyright owners.
Code Name: ASBATIME

# TIME CHARTER
## New York Produce Exchange Form

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

| | | |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in *London* ............................... | 1 |
| | .........................*29th* ........... day of *December* ................. ~~19~~ *2006* | 2 |
| Owners | between *OCEAN PRIDE CO. LTD., VALLETTA, MALTA* | 3 |
| | .................................................................................. Owners of | 4 |
| | the good *Maltese flag*....................... ~~Steamship~~/Motorship .... *M/V 'OCEAN D'*........ | 5 |
| Description | of *See Clause 28* ........................ of ...................................~~tons gross register, and~~ | 6 |
| of | ............................................ ~~tons net register, having engines of~~ | 7 |
| Vessel | ~~horsepower and with hull, machinery and equipment in a throughly efficient~~ | 8 |
| | ~~state, and classed~~ ......................................................................... ~~of about~~ | 9 |
| | .................................................... ~~cubic feet grain/bale capacity~~ ................... | 10 |
| | ................................................................................. ~~, and about~~ | 11 |
| | ...........................................~~long/metric tons deadweight capacity (cargo and~~ | 12 |
| | ~~bunkers, including fresh water and stores not exceeding~~ ................................ | 13 |
| | ~~long/metric tons) on a salt water draft of~~ ..................................... ~~on summer~~ | 14 |
| | ~~freeboard, inclusive of permanent bunkers, which are of the capacity of about~~ | 15 |
| | ...................................................................... ~~long/metric tons of~~ | 16 |
| | .................................................................... ~~fuel oil and~~ | 17 |
| | ~~long/metric tons of~~.......................................................................... ~~, and~~ | 18 |
| | ~~capable of steaming, fully laden, under good weather conditions about~~ | 19 |
| | .........................~~knots on a consumption of about~~ .................................... | 20 |
| | ~~long/metric tons of~~.......................................................................... | 21 |
| | ...................................................................................................... | 22 |
| | *now trading*.................................................................................... | 23 |
| | ................................................................................................ *and* | 24 |
| Charterers | *WORTHINGTON BULK LIMITED* ........................................................ | 25 |
| | ........................... Charterers of the City of ... *HAMILTON, BERMUDA.* | 26 |
| | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| Duration | time of delivery for about .... *a Timecharter period of minimum 3 months to maximum 4* | 28 |
| | *months plus/minus 5 days in Charterers' option via safe port(s)/safe berth(s)/safe* | 29 |
| | *anchorage(s), always afloat except NAABSA at Argentina/Brazil/Uruguay as per NYPE* | 30 |
| | ~~CP Clause 5 where it is customary for such type of vessels, always within I.W.L., for South~~ | |
| | *America Coastal trading always excluding Colombia,* within below mentioned trading | |
| | limits. | |
| Sublet | ~~Charterers shall have liberty to sublet the vessel for all or any part of the~~ | 31 |
| | ~~time covered by this Charter, but Charterers shall remain responsible for the~~ | 32 |
| | ~~fulfilment of this Charter.~~ | 33 |
| Delivery | Vessel shall be placed at the disposal of the Charterers *on dropping last outward* | 34 |
| | *sea pilot Montevideo, any time day or night, Sundays and holidays included,* | 35 |
| | .................................................................................................. | 36 |
| | | 37 |
| | ~~in such dock or at such berth or place (where she may safely lie, always afloat,~~ | 38 |
| | ~~at all times of tide, except as otherwise provided in Clause 6) as the Charterers~~ | 39 |
| | ~~may direct. If such dock, berth or place be not available, time shall count as~~ | 40 |
| | ~~provided in Clause 6.~~ Vessel on *arrival first loading port her delivery* shall be ready to | 41 |
| | receive *any permissible* cargo with | |
| | clean-swept holds and tight, staunch, strong and in every way fitted for ordi- | 42 |
| | nary cargo service, having water ballast and with sufficient power to operate all | 43 |
| | cargo-handling gear simultaneously (and with full complement of officers and | 44 |
| | crew for a vessel of her tonnage), to be employed in carrying lawful merchan- | 45 |
| Dangerous | dise excluding *(See Clause 29).* ~~any goods of a dangerous, injurious, flammable or~~ | 46 |
| | ~~corrosive~~ | |
| Cargo | ~~nature unless carried in accordance with the requirements or recom-~~ | 47 |
| | ~~mendations of the proper authorities of the state of the vessel's registry and of~~ | 48 |
| | ~~the states of ports of shipment and discharge and of any intermediate states or~~ | 49 |
| | ~~ports through whose waters the vessel must pass. Without prejudice to the~~ | 50 |
| Cargo | ~~generality of the foregoing, in addition the following are specifically excluded:~~ | 51 |

| | | |
|---|---|---|
| Exclusions | ~~livestock of any description, arms, ammunition, explosives~~ | 52 |
| | | 53 |
| | | 54 |
| | | 55 |
| | | 56 |
| Trading Limits | The vessel shall be employed in such lawful trades between safe ports and places within *British Institute Warranty Limits - See Clause 80* | 57 |
| | | 58 |
| | ~~excluding~~ | 59 |
| | | 60 |
| | | 61 |
| | | 62 |
| | as the Charterers or their agents shall direct, on the following conditions: | 63 |
| Owners to | 1. The Owners shall provide and pay for the insurance of the vessel and for all provisions, *drinking water/garbage removal/immigration/compulsory garbage removal Charterers' account,* cabin, deck, engine-room and other necessary stores, in- | 64 |
| | | 65 |
| Provide | cluding *lubricating oil/drinking water,* boiler water; shall pay for wages, consular shipping and discharging | 66 |
| | fees of the crew and charges for port services pertaining to the crew; shall maintain vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service. | 67 |
| | | 68 |
| | | 69 |
| Charterers to | 2. The Charterers, while the vessel is on hire, shall provide and pay for all the fuel *and MDO* except as otherwise agreed, port charges, *compulsory and customary* pilotages, towages, agen- | 70 |
| | | 71 |
| Provide | cies, *canal/river tolls/dues,* commissions, consular charges (except those pertaining to individual | 72 . |
| | crew members or flag of the vessel), *for clearance, cargo purposes and other Charterers' business only, boatage on Charterers' business* and all other usual expenses except those | 73 |
| | stated in Clause 1, but when the vessel puts into a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew shall be for Owners' account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this Charter shall be for Charterers' account *including officers and crew transportation and accommodation. All other* ~~fumigations shall be for Charterers' account after vessel has~~ | 74 |
| | | 75 |
| | | 76 |
| | | 77 |
| | | 78 |
| | | 79 |
| | | 80 |
| | ~~been on charter for a continuous period of six months or more.~~ *Owners to keep on board a valid deratisation certificate throughout the Charter Party period.* | |
| | Charterers shall provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but Owners' shall allow the use of any dunnage and shifting boards as already aboard vessel. | 81 |
| | | 82 |
| | | 83 |
| | | 84 |
| Bunkers on Delivery and Redelivery | 3. ~~The Charterers on delivery, and the Owners on redelivery, shall take over and pay for oil fuel and diesel oil remaining on board the vessel as hereunder. The vessel shall be delivered with:~~ | 85 |
| | | 86 |
| | | 87 |
| | ~~long/metric tons of fuel oil at the price of~~ ~~per ton;~~ | 88 |
| | ~~tons of diesel oil at the price of~~ | 89 |
| | ~~per ton. The vessel shall be redelivered with:~~ | 90 |
| | ~~tons of fuel oil at the price of~~ ~~per ton:~~ | 91 |
| | ~~tons of diesel oil at the price of~~ ~~per ton~~ | 92 |
| | *See Clause No. 79* | 93 |
| | | 94 |
| | ~~(*Same tons apply throughout this clause)~~ | 95 |
| Rate of Hire | 4. The Charterers shall pay for the use and hire of the said vessel at the rate of *USD 16,500 (Sixteen Thousand Five Hundred Dollars)* daily, or *pro rata including overtime* ~~United States Currency per ton or vessel's total deadweight carrying capacity, including bunkers and stores, on~~ ~~summer freeboard, per calendar month,~~ | 96 |
| | | 97 |
| | | 98 |
| | | 99 |
| | | 100 |
| | commencing on and from the *time* ~~day~~ of her delivery, as aforesaid, and at and after the same rate for any part of a *day* ~~month;~~ hire shall continue until the hour of the | 101 |
| | | 102 |
| Redelivery Areas and Notices | day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners (unless vessel lost) at *on dropping last outward sea pilot one safe port Santos/Recalada range, any time day or night, Sundays and holidays included,* | 103 |
| | | 104 |
| | | 105 |
| | | 106 |

|  | ............................................................................ unless otherwise mutually agreed. | 107 |
|  | Charterers shall give Owners not less than *15/10/7 approximate* ............... days notice | 108 |
|  | of vessel's expected date of redelivery and probable port *plus 5/3/2/1 days definite* | 109 |
|  | *notice of redelivery and name of port. Charterers to keep Owners fully advised of vessel's* | 110 |
|  | *position.* |  |
| **Hire** | 5. Payment of hire shall be made *by telegraphic transfer on or before due date* so | 111 |
|  | as to be received by Owners or their |  |
| **Payment** | designated payee ~~in New York, i.e.~~ ......... *See Clause No. 78* ................................................. | 112 |
| **and** | ............................................................................................................................................ | 113 |
| **Commencement** | ............................................................................................................................................ | 114 |
|  | ...................................................... in United States Currency, In funds | 115 |
|  | available to the Owners on the due date, semi-monthly in advance, and for the | 116 |
|  | last half month or part of same the approximate amount of hire, and should | 117 |
|  | same not cover the actual time, hire shall be paid for the balance day by day as | 118 |
|  | it becomes due. If so required by Owners. ~~Failing the punctual and regular~~ | 119 |
|  | ~~payment of the hire, or on any breach of this Charter, the Owners shall be at~~ | 120 |
|  | ~~liberty to withdraw the vessel from the service of the Charterers without pre-~~ | 121 |
|  | ~~judice to any claims they (the Owners) may otherwise have on the Charterers.~~ | 122 |
|  | ~~Time shall count from 7 A.M. on the working day following that on~~ | 123 |
|  | ~~which written notice of readiness has been given to Charterers or their agents~~ | 124 |
|  | ~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~ | 125 |
|  | ~~using vessel at once, in which case the vessel will be on hire from the com-~~ | 126 |
|  | ~~mencement of work.~~ | 127 |
| **Cash** | Cash for vessel's ordinary disbursements at any port may be advanced, | 128 |
| **Advances** | as required by the Captain, *subject to Owners' prior approval,* by the Charterers or | 129 |
|  | their agents, subject to 2 1/2 |  |
|  | percent commission and such advances shall be deducted from the hire. The | 130 |
|  | Charterers, however, shall in no way be responsible for the application of such | 131 |
|  | advances. | 132 |
| **Berths** | 6. Vessel shall be loaded and discharged in any *safe* dock or at any *safe* berth | 133 |
|  | or *safe* |  |
|  | place that Charterers or their agents may direct, provided the vessel can safely | 134 |
|  | lie always afloat at any time of tide, except at such places where it is customary | 135 |
|  | for similar size vessels to safely lie aground *in Argentina/Brazil/Uruguay, always within* | 136 |
|  | *I.W.L. for South America Coastal trading always excluding Colombia.* |  |
| **Spaces** | 7. The whole reach of the vessel's holds, *(no cargo is allowed to be loaded on* | 137 |
|  | *deck under this Charter Party),* decks, and usual places of |  |
| **Available** | loading (not more than she can reasonably and safely stow and carry), also | 138 |
|  | accommodations for supercargo, if carried, shall be at the Charterers' dis- | 139 |
|  | posal, reserving only proper and sufficient space for ship's officers, crew, | 140 |
|  | tackle, apparel, furniture, provisions, stores and fuel. | 141 |
| **Prosecution** | 8. The Captain shall prosecute his voyages with due despatch, and shall | 142 |
| **of** | render all customary assistance with ship's crew and boats. The Captain | 143 |
| **Voyages** | (although appointed by the Owners) shall be under the orders and directions of | 144 |
|  | the Charterers as regards employment and agency; and Charterers are to | 145 |
|  | perform all cargo handling *i.e. load, stow, trim, secure, unsecure, dunnage, undunnage,* | 146 |
|  | *tally and discharge* at their expense under the supervision of the |  |
|  | Captain, who is to sign the bills of lading for cargo as presented in conformity | 147 |
|  | with mate's ~~or tally clerk's~~ receipts. However, at Charterers' option, the Chart- | 148 |
|  | erers or their agents may sign bills of lading on behalf of the Captain always in | 149 |
| **Bills** | conformity with mate's ~~or tally clerk's~~ receipts. All ~~bills of lading shall be~~ | 150 |
| **of** | ~~without prejudice to this Charter and the Charterers shall indemnify the Own-~~ | 151 |
| **Lading** | ~~ers against all consequences or liabilities which may arise from any inconsis-~~ | 152 |
|  | ~~tency between this Charter and any bills of lading or waybills signed by the~~ | 153 |
|  | ~~Charterers or their agents or by the Captain at their request.~~ | 154 |
| **Conduct of** | 9. If the Charterers shall have reason to be dissatisfied with the conduct of | 155 |
| **Captain** | the Captain or officers, the Owners shall, on receiving particulars of the | 156 |
|  | complaint, investigate the same, and, if necessary, make a change in the | 157 |
|  | appointments. | 158 |
| **Supercargo** | 10. The Charterers are entitled to appoint a supercargo *at Charterers' risk and* | 159 |
|  | *responsibility who is to sign to the Master relevant Letter of Indemnity as per P&I Club* |  |
|  | *wording,* who shall accom- |  |
| **and** | pany *but not sail with* the vessel and see that voyages are prosecuted with due | 160 |
|  | despatch. He is |  |
| **Meals** | to be furnished with free *and suitable* accommodation and same fare as provided for | 161 |

|  |  |
|---|---|
| | Captain's table, Charterers paying at the rate of *USD20.00*........................... per day. | 162 |
| | ~~Owners shall victual pilots and customs officers, and also, when authorized by~~ | 163 |
| | ~~Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,~~ | 164 |
| | ~~Charterers paying at the rate of..................................per meal for all such victual-~~ | 165 |
| | ~~ling.~~ | 166 |

**Sailing Orders and Logs**
11. The Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the Captain shall keep full and correct deck and engine logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs, showing the course of the vessel, distance run and the consumption of fuel. — 167–173

**Ventilation**
12. The Captain shall use diligence in caring for the ventilation of the cargo. *Vessel has natural ventilation only.* — 174–175

**Continuation**
13. ~~The Charterers shall have the option of continuing this Charter for a~~ ~~further period of.........................................................................................~~
...................................................................................................................... — 176–178

**Laydays/ Cancelling**
14. If required by Charterers, time shall not commence before *00:01 hours 12th January 2007* .......................... and should vessel not have *been delivered* ~~given written~~ ~~notice of readiness~~ on or before *24:00 hours 16th January 2007* ...................... ~~but not~~ ~~later than 4 P.M.~~ Charterers or their agents shall have the option of cancelling this Charter at any time not later than the day of vessel's readiness. — 179–183

**Off**
15. In the event of the loss of time from deficiency and/or default, *strikes or* *sabotage by* ~~of~~ officers — 184

**Hire**
or crew or deficiency of stores, fire, breakdown of, or damages to, hull, machinery or equipment, grounding, detention by average accidents to ship or cargo unless resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or painting bottom, or by any other similar cause preventing the full working of the vessel, the payment of hire and overtime, if any, shall cease for the *actual* time thereby lost. *See Clause No. 46.* ~~Should the vessel deviate~~ — 185–190

~~or put back during a voyage, contrary to the orders or directions of the~~ ~~Charterers, for any reason other than accident to the cargo, the hire is to be~~ ~~suspended from the time of her deviating or putting back until she is again in~~ ~~the same or equidistant position from the destination and the voyage resumed~~ ~~therefrom. All fuel used by the vessel while off hire shall be for Owners'~~ ~~account.~~ In the event of the vessel being driven into port or to anchorage through stress of weather, trading to shallow harbors or to rivers or ports with bars, any detention of the vessel and/or expenses resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra *directly related and fully documented* expenses shall be deducted from the hire. — 191–202

**Total Loss**
16. Should the vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. — 203–205

**Exceptions**
The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the seas, rivers, machinery, boilers and steam navigation, and errors of navigation throughout this Charter, always mutually excepted. — 206–209

**Liberties**
The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property. — 210–212

**Arbitration**
17. Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *Arbitration in London in accordance with the Arbitration Act 1950 and any subsequent alterations. The award of the Arbitration* ~~three~~ ~~persons at New York, one to be~~ — 213–214

~~appointed by each of the parties hereto, and the third by the two so chosen;~~ ~~their decision, or that of any two of them,~~ shall be final and for the purpose of enforcing any award this agreement may be made a rule of the Court. The arbitrators shall be commercial men conversant with shipping matters. — 215–218

**Liens**
18. The Owners shall have a lien upon all cargoes and all sub-freights *and* *sub-hires* for — 219
any amounts due under this Charter, including general average contributions, — 220

|  |  |  |
|---|---|---|
|  | and the Charterers shall have a lien on the ship for all monies paid in advance | 221 |
|  | and not earned, and any overpaid hire or excess deposit to be returned at once. | 222 |
|  | Charterers will not suffer, nor permit to be continued, any lien or encumbrance | 223 |
|  | incurred by them or their agents, which might have priority over the title and | 224 |
|  | interest of the Owners in the vessel. | 225 |
| Salvage | 19. All derelicts and salvage shall be for Owners' and Charterers' equal | 226 |
|  | benefit after deducting Owners' and Charterers' expenses and crew's propor- | 227 |
|  | tion. | 228 |
| General | General average shall be adjusted, according to York-Antwerp Rules | 229 |
| Average | 1974, *as amended 1990 or any amendments thereto in London. Hire not to contribute to* | 230 |
|  | *General Average.* ~~at such port or place in the United States as may be selected by the~~ | |
|  | ~~Owners and as to matters not provided for by these Rules, according to the~~ | 231 |
|  | ~~laws and usage at the port of New York. In such adjustment disbursements in~~ | 232 |
|  | ~~foreign currencies shall be exchanged into United States money at the rate~~ | 233 |
|  | ~~prevailing on the dates made and allowances for damage to cargo claimed in~~ | 234 |
|  | ~~foreign currency shall be converted at the rate prevailing on the last day of~~ | 235 |
|  | ~~discharge at the port or place of final discharge of such damaged cargo from~~ | 236 |
|  | ~~the ship. Average agreement or bond and such additional security, as may be~~ | 237 |
|  | ~~required by the Owners, must be furnished before delivery of the goods. Such~~ | 238 |
|  | ~~cash deposit as the Owners or their agents may deem sufficient as additional~~ | 239 |
|  | ~~security for the contribution of the goods and for any salvage and special~~ | 240 |
|  | ~~charges thereon, shall, if required, be made by the goods, shippers, consign-~~ | 241 |
|  | ~~ees or owners of the goods to the Owners before delivery. Such deposit shall,~~ | 242 |
|  | ~~at the option of the Owners, be payable in United States money and remitted to~~ | 243 |
|  | ~~the adjuster. When so remitted the deposit shall be held in a special account at~~ | 244 |
|  | ~~the place of adjustment in the name of the adjuster pending settlement of the~~ | 245 |
|  | ~~general average and refunds or credit balances, if any, shall be paid in United~~ | 246 |
|  | ~~States money.~~ | 247 |
| York- | Charterers shall procure that all bills of lading issued during the cur- | 248 |
| Antwerp | rency of the Charter will contain a provision to the effect that general average | 249 |
| Rules | shall be adjusted according to York-Antwerp Rules 1974 *as amended 1994 or any* | 250 |
|  | *amendments thereto* and will include the | |
|  | "New Jason Clause" as per Clause 23. | 251 |
| Drydocking | 20. The vessel was last drydocked ............................................................ The | 252 |
|  | Owners shall have the option to place the vessel in drydock during the cur- | 253 |
|  | rency of this Charter at a convenient time and place, to be mutually agreed | 254 |
|  | upon between Owners and Charterers, for bottom cleaning and painting | 255 |
|  | and/or repair as required by class or dictated by circumstances. Payment of | 256 |
|  | hire shall be suspended upon deviation from Charterers' service until vessel is | 257 |
|  | again placed at Charterers' disposal at a point not less favorable to Charterers | 258 |
|  | than when the hire was suspended ......................................................... | 259 |
|  | ......................................................................................................... | 260 |
|  | ......................................................................................................... | 261 |
| Cargo | 21. Owners shall maintain the cargo-handling gear of the ship which is as | 262 |
| Gear | follows: *See Clause No. 28* .............................................................. | 263 |
|  | *Crew not to drive cranes.  Competent shore cranemen to be employed and paid by* | 264 |
|  | *Charterers.* .................................................................................... | 265 |
|  | providing gear (for all derricks or cranes) capable of lifting capacity as de- | 266 |
|  | scribed. Owners shall also provide on the vessel *sufficient electric light* for night *work* | 267 |
|  | *as on board, free of expense to the Charterers and same to be maintained in efficient* | |
|  | *working order.* ~~work lights as on~~ | |
|  | ~~board, but all additional lights over those on board shall be at Charterers'~~ | 268 |
|  | ~~expense.~~ The Charterers shall have the use of any gear on board the vessel. If | 269 |
|  | required by Charterers, the vessel shall work night and day and all cargo- | 270 |
|  | handling gear shall be at Charterers' disposal during loading and discharging. | 271 |
| Stevedore | In the event of disabled cargo-handling gear, or insufficient power to operate | 272 |
| Stand-by | the same, the vessel is to be considered to be off hire to the extent that time is | 273 |
|  | actually lost to the Charterers and Owners to pay stevedore stand-by charges | 274 |
|  | occasioned thereby *for the duration of the shift only.* If required by the Charterers, the | 275 |
|  | Owners are to bear the | |
|  | cost of hiring shore gear in lieu thereof *in such case vessel to remain on hire.* | 276 |
| Crew | 22. ~~In lieu of any overtime payments to officers and crew for work ordered~~ | 277 |
| Overtime | ~~by Charterers or their agents, Charterers shall pay Owners $~~.............................. | 278 |
|  | ~~per month or pro rata.~~ | 279 |

Clauses
Paramount

23. The following clause is to be included in all bills of lading issued 280
hereunder: 281
  This bill of lading shall have effect subject to the provisions of the 282
Carriage of Goods by Sea Act of the United States, the Hague Rules, or the 283
Hague Visby Rules, as applicable, or such other similar national legislation as 284
may mandatorily apply by virtue of origin or destination of the bills of lading, 285
which shall be deemed to be incorporated herein and nothing herein con- 286
tained shall be deemed a surrender by the carrier of any of its rights or 287
immunities or an increase of any of its responsibilities or liabilities under said 288
applicable Act. If any term of this bill of lading be repugnant to said applicable 289
Act to any extent, such term shall be void to that extent, but no further. 290
See Clause No. 55.
  This Charter is subject to the following clauses all of which are to be 291
included in all bills of lading issued hereunder: 292

New
Both-
to-
Blame
Collision
Clause

  If the ship comes into collision with another ship as a result of the 293
negligence of the other ship and any act, neglect or default of the master, 294
mariner, pilot or the servants of the carrier in the navigation or in the manage- 295
ment of the ship, the owners of the goods carried hereunder will indemnify the 296
carrier against all loss or liability to the other or non-carrying ship or her 297
owners insofar as such loss or liability represents loss of, or damage to, or any 298
claim whatsoever of the owners of said goods, paid or payable by the other or 299
non-carrying ship or her owners to the owners of said goods and set off, 300
recouped or recovered by the other or non-carrying ship or her owners as part 301
of their claim against the carrying ship or carrier. 302
  The foregoing provisions shall also apply where the owners, operators 303
or those in charge of any ships or objects other than, or in addition to, the 304
colliding ships or objects are at fault in respect to a collision or contact. 305

New
Jason
Clause

  In the event of accident, danger, damage or disaster before or after 306
commencement of the voyage resulting from any cause whatsoever, whether 307
due to negligence or not, for which, or for the consequences of which, the 308
carrier is not responsible, by statute, contract, or otherwise, the goods, ship- 309
pers, consignees, or owners of the goods shall contribute with the carrier in 310
general average to the payment of any sacrifices, losses, or expenses of a 311
general average nature that may be made or incurred, and shall pay salvage 312
and special charges incurred in respect of the goods. 313
  If a salving ship is owned or operated by the carrier, salvage shall be 314
paid for as fully as if salving ship or ships belonged to strangers. Such deposit 315
as the carrier or his agents may deem sufficient to cover the estimated con- 316
tribution of the goods and any salvage and special charges thereon shall, if 317
required, be made by the goods, shippers, consignees or owners of the goods 318
to the carrier before delivery. 319

War
Clauses

  (a) No contraband of war shall be shipped. Vessel shall not be re- 320
quired, without the consent of Owners, which shall not be unreasonably 321
withheld, to enter any port or zone which is involved in a state of war, warlike 322
operations, or hostilities, civil strife, insurrection or piracy whether there be a 323
declaration of war or not, where vessel, cargo or crew might reasonably be 324
expected to be subject to capture, seizure or arrest, or to a hostile act by a 325
belligerent power (the term "power" meaning any de jure or de facto authority 326
or any purported governmental organization maintaining naval, military or air 327
forces). 328
  (b) If such consent is given by Owners, Charterers will pay the provable 329
additional cost of insuring vessel against hull war risks in an amount equal to 330
the value under her ordinary hull policy but not exceeding a valuation of 331
............................................. in addition. Owners may purchase and Charterers 332
will pay for war risk insurance on ancillary risks such as loss of hire, freight 333
disbursements, total loss, blocking and trapping, etc. If such insurance is not 334
obtainable commercially or through a government program, vessel shall not 335
be required to enter or remain at any such port or zone. 336
  (c) In the event of the existence of the conditions described in (a) 337
subsequent to the date of this Charter, or while vessel is on hire under this 338
Charter, Charterers shall, in respect of voyages to any such port or zone 339
assume the provable additional cost of wages and insurance properly incurred 340
in connection with master, officers and crew as a consequence of such war, 341
warlike operations or hostilities. 342

Ice

24. The vessel shall not be required to enter or remain in any icebound port 343

Aug. 11. 2008  3.44PM    .Lennon, murpny & Lennon LLC                    No. 0075   r. 20

|  |  |  |
|---|---|---|
|  | or area, nor any port or area where lights or lightships have been or are about | 344 |
|  | to be withdrawn by reason of ice, nor where there is risk that in the ordinary | 345 |
|  | course of things the vessel will not be able on account of ice to safely enter and | 346 |
|  | remain in the port or area or to get out after having completed loading or | 347 |
|  | discharging. *Vessel not to force ice, nor to follow ice breakers.* | 348 |
| **Navigation** | 25. Nothing herein stated is to be construed as a demise of the vessel to the | 349 |
|  | Time Charterers. The Owners shall remain responsible for the navigation of the | 350 |
|  | vessel, acts of pilots and tug boats, insurance, crew, and all other similar | 351 |
|  | matters, same as when trading for their own account. | 352 |
| **Commissions** | 26. A commission of *1.25* ................................ percent is payable by the vessel | 353 |
|  | and Owners to *THURLESTONE SHIPPING LTD.* .................................................. | 354 |
|  | ........................................................................................................................... | 355 |
|  | on hire earned and paid under this Charter, and also upon any continuation or | 356 |
|  | extension of this Charter. | 357 |
| **Address** | 27. An address commission of ..... *3.75* ........................................... percent | 358 |
|  | is payable to *Charterers* ............................................................................... | 359 |
|  | ........................................................................................................................... | 360 |
|  | on hire earned and paid under this Charter. | 361 |
| **Rider** | Rider Clauses *28 to 90* ....................................................................... as at- | 362 |
|  | tached hereto are incorporated in this Charter. | 363 |

*THE OWNERS:*                              *THE CHARTERERS:*

## Rider of Suggested Additional Clauses

(None of these Clauses apply unless expressly agreed during the negotiations and enumerated in line 362)

| | | |
|---|---|---|
| Extension of Cancelling | 28. If it clearly appears that, despite the exercise of due diligence by Owners, the vessel will not be ready for delivery by the cancelling date, and provided Owners are able to state with reasonable certainty the date on which the vessel will be ready, they may, at the earliest seven days before the vessel is expected to sail for the port or place of delivery, require Charterers to declare whether or not they will cancel the Charter. Should Charterers elect not to cancel, or should they fail to reply within seven days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by Owners shall replace the original cancelling date. Should the vessel be further delayed, Owners shall be entitled to require further declarations of Charterers in accordance with this Clause. | 364 365 366 367 368 369 370 371 372 373 374 |
| Grace Period | 29. Where there is failure to make "punctual and regular payment" of hire, Charterers shall be given by Owners two clear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those two days following Owners' notice, the payment shall stand as regular and punctual. Payment received by Owners' bank after the original due date will bear interest at the rate of 0.1 percent per day which shall be payable immediately by Charterers in addition to hire. | 375 376 377 378 379 380 381 |
| | At any time while hire is outstanding the Owners shall be absolutely entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof in respect of which the Charterers hereby indemnify the Owners and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account. | 382 383 384 385 386 387 |
| Cargo Claims | 30. Damage to and claims on cargo shall be for Owners' account if caused by unseaworthiness of the vessel, but shall be for Charterers' account if caused by handling and stowage, including slackage. Claims for shortage ex ship shall be shared equally between Owners and Charterers. | 388 389 390 391 |
| War Cancellation | 31. In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: The United States of America, the United Kingdom, France, the Union of Soviet Socialist Republics, the People's Republic of China, ....................................................... ................................................................................................................................. ................................................................................................................................. | 392 393 394 395 396 397 |
| | or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either the Owners or the Charterers may cancel this Charter. Whereupon the Charterers shall redeliver the vessel to the Owners in accordance with Clause 4; if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of this Charter shall apply until redelivery. | 398 399 400 401 402 403 404 405 406 407 408 |
| War Bonus | 32. Any war bonus to officers and crew due to vessel's trading or cargo carried shall be for Charterers' account. | 409 410 |
| Requisition | 33. Should the vessel be requisitioned by the government of the vessel's flag during the period of this Charter, the vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by Owners. The period during which the vessel is on requisition to the said government shall count as part of the period provided for in this Charter. | 411 412 413 414 415 416 |
| | If the period of requisition exceeds ..............................................months, either party shall have the option of cancelling this Charter and no consequential claim may be made by either party. | 417 418 419 |
| On/Off-hire Survey | 34. Prior to delivery and redelivery the parties shall each appoint surveyors, for their respective accounts, who shall conduct joint on-hire/off-hire surveys. A single report shall be prepared on each occasion and signed by each surveyor, without prejudice to his right to file a separate report setting | 420 421 422 423 |

forth items upon which the surveyors cannot agree. If either party fails to have     424
a representative attend the survey and sign the joint survey report, such party       425
shall nevertheless be bound for all purposes by the findings in any report           426
prepared by the other party. On-hire survey shall be on Charterers' time and         427
off-hire survey on Owners' time.                                                     428

**Stevedore Damage**

35. Any damage caused by stevedores during the currency of this Charter              429
shall be reported by Captain to Charterers or their agents, in writing, within 24    430
hours of the occurrence or as soon as possible thereafter. The Captain shall         431
use his best efforts to obtain written acknowledgement by responsible parties        432
causing damage unless damage should have been made good in the mean-                 433
time.                                                                                434

Stevedore damages involving seaworthiness shall be repaired without                  435
delay to the vessel after each occurrence in Charterers' time and shall be paid      436
for by the Charterers. Other minor repairs shall be done at the same time, but if    437
this is not possible, same shall be repaired while vessel is in drydock in           438
Owners' time, provided this does not interfere with Owners' repair work, or by       439
vessel's crew at Owners' convenience. All costs of such repairs shall be for         440
Charterers' account. Any time spent in repairing stevedore damage shall be for       441
Charterers' account.                                                                 442

Charterers shall pay for stevedore damages whether or not payment                    443
has been made by stevedores to Charterers.                                           444

**Charterers' Colors**

36. Charterers shall have the privilege of flying their own house flag and           445
painting the vessel with their own markings. The vessel shall be repainted in        446
Owners' colors before termination of the Charter. Cost and time of painting,         447
maintaining and repainting those changes effected by Charterers shall be for         448
Charterers' account.                                                                 449

**Return Premium**

37. Charterers shall have the benefit of any return insurance premium                450
receivable by Owners from their underwriters as and when received from               451
underwriters by reason of vessel being in port for a minimum period of 30 days       452
if on full hire for this period or pro rata for the time actually on hire.           453

38. The vessel shall be off hire during any time lost on account of vessel's         454
non-compliance with government and/or state and/or provincial regulations            455
pertaining to water pollution. In cases where vessel calls at a U.S. port, Owners    456
warrant to have secured and carry on board the vessel a Certificate of Financial     457
Responsibility as required under U.S. law.                                           458

---

This Charter Party is a computer generated copy of the ASBATIME (1981) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licencee or end user as appropriate and not by the author.

AUG. 17. 2003  3:43PM    LENNON, MURPHY & LENNON LLC                     NO. 0070    P. 25

M/V "OCEAN  D"
CHARTER PARTY DATED 29TH  DECEMBER 2006

Clause 28 :

VESSEL'S DESCRIPTION
M/V OCEAN D
SD/LAKER - DWT 26,779 MTS ON 10.407 M SSW -
MLT/77 - LOA/BM 177/22.9 M,
GRT/NRT 16465/10132 -
GRAIN/BALE CAPACITY: 34270/32580 CBM -
TPC 35.18,
5 H/H - MCGREGOR HATCHCOVERS - DEPTH MOULDED 14.5 M -
CO2 FITTED,

HATCH DIMS: WIDTH 11.5 M, LENGTH H1) 13 M, H2/4 13.4 M,
H3/5 12.8 M

HOLD  DIMS: WIDTH F/A (M) LENGTH (M)
NO 1        7.2/18.1       26.0
NO 2       18.1/18.1       27.8
NO 3       18.1/18.1       17.6
NO 4       18.1/18.1       28.6
NO 5       18.1/11.8       24.0

CUBIC BREAKDOWN BY HOLD  IN CBM:
        GRAIN /  BALE
NO 1     6454  /  6185
NO 2     8081  /  7629
NO 3     4750  /  4533
NO 4     8325  /  7867
NO 5     6660  /  6366
-----------------------
       34270  / 32580  TOTAL IN MAIN HOLDS

STRENGTH: (MTS/SQM):
TANKTOP           15 IN ALL HOLDS

CRANES 5 X 15 MTS
GEAR LOCATION:
CRANE NO 1    BETWEEN 1 + 2 HOLDS
CRANE NO 2+3  BETWEEN 2 + 3 HOLDS
CRANE NO 4+5  BETWEEN 4 + 5 HOLDS

CLASS: AMERICAN BUREAU OF SHIPPING -
P+I: WEST OF ENGLAND

SPEED/CONS ABT 12.5 KN ON ABT 26 MTS IFO 180 CST + 2.5 MTS
MDO.
AT PORT ABT 2.5 MT MDO IDLE / ABT 3.5 MTS MDO WHEN GEAR
WORKING.
VESSEL BURNS MDO WHEN MANOEUVRING IN SHALLOW WATERS,
RIVERS, CHANNELS, ICE-BOUND WATERS
ALL DETAILS ABOUT

VESSEL'S BALTIC EXCHANGE QUESTIONNAIRE TO APPLY AS
ATTACHED.

1

Clause 29 : .
_____

CARGO EXCLUSIONS
_____

Vessel to trade always with lawful/harmless/non-dangerous
/non-corrosive/non-inflammable/non-injurious/non-hazardous
cargoes excluding any cargo under IMDG/IMO Code and always
in conformity with vessel's Certificate of Compliance for
the Carriage of Solid Bulk Cargoes.

The only cargoes allowed under this Charter Party are bulk
grains including barley/malt, bulk urea, steel products and
harmless fertiliser. All other cargoes are excluded.

Vessel not to load cargoes from Brazil for which DFC Survey
is required.
Always excluded cargoes for which Appendix B is needed.
Always excluded all oily cargoes.

All cargoes to be loaded/stowed/carried/discharged in strict
conformity with I.M.O. and local regulations. Any extra
fittings/equipment, etc., which are required to observe such
regulations to be undertaken by Charterers at their
time/expense.

Clause 30 :
_____

Deleted.

Clause 31 :
_____

WAR RISK INSURANCE
_____

Basic war risk insurance premium for worldwide trading
shall be for Owners' account and additional premiums
for hull and machinery and Officers/crew and crew war
bonus, if any, due to the vessel's trading to the
restricted area shall be for Charterers' account.
Insurance/extra insurance not to exceed official
quotation by Lloyds Underwriters, London. However, if
such insurance is not obtainable commercially or
through a Government programme, the vessel shall not
be required to enter or remain at any such port or
zone. However, if war situation becomes serious, Owners
will have the right to refuse vessel entering into war
zone and Owners and Charterers shall further discuss
in good faith on alternative arrangements. However,
Owners shall not unreasonably refuse entering vessel
if similar vessels operated by first class companies
currently trading to such area.

2

Clause 32 :

## PANAMA/SUEZ CANAL TRANSIT

The Owners guarantee that the vessel shall be fully fitted for Panama/Suez Canal transit and in possession of valid necessary certificate during the currency of this Charter to comply with current regulations and requirements of both Canals.

Clause 33 :

## BOYCOTT

If the vessel is boycotted, picketed, blacklisted or if any similar incident occurs at any port or place by shore and/or port labours and/or tugboats and/or pilots or by Government and/or any authority by reason of the vessel's flag or registry or manning or Ownership/management or terms and conditions on which members of the Officers/Crew are employed, or by reason of the vessel's construction and/or her cargo gear and/or her fittings and/or her other equipment, and any directly related expenses incurred therefrom to be for Owners' account and the Charterers are entitled to place the vessel off-hire for any time lost by such reasons. Charterers shall not trade the vessel to any port or place where the vessel is known to be boycotted by shore and/or port labours and/or tugboats and/or pilots or by Government and/or any authority by reason of the vessel's flag/registry.

Clause 34 :

## WAR CANCELLATION

If War breaks out between any two or more of the following Countries :

United Kingdom, U.S.A., Malaysia, People's Republic of China, Japan, Cyprus, Greece and Turkey directly affecting the performance of this Charter, both the Owners and the Charterers shall have the option of cancelling this Charter, provided that the trading of the vessel is significantly affected adversely due to the outbreak of War.
The Charterers shall redeliver the vessel to the Owners, if she has cargo on board after discharge thereof at destination, or if debarred from reaching

3

or entering it at a near open and safe port as
directed by the Charterers, or if she has no cargo on
board at a port at which she stays or if at sea at a
near and safe port as directed by the Charterers. In
all cases hire shall be paid until the vessel's
redelivery. Both Owners and Charterers shall act in
good faith in invoking this Clause.

## Clause 35 :

### REQUISITION

Should the vessel be requisitioned by the Government
of the Vessel's flag during the period of this
Charter, the vessel shall be deemed to be off-hire
during the period of such requisition and any hire
paid by the said Government in respect of such
requisition period shall be retained by the Owners. In
the event for such requisition, the Charterers shall
have the option to cancel the balance period of this
Charter.

## Clause 36 :

### DERATTING CERTIFICATE

The vessel shall be delivered with valid deratting or
deratting exemption certificate. If such certificate
does not cover the whole period of the Charter, costs
of renewal of certificates and any required fumigation
for obtaining of such certificate, if necessary, shall
be for Owners' account. Any detention and extra
directly related and proven expenses incurred thereby
shall also be for the Owners' account.

## Clause 37 :

### QUARANTINE

Normal quarantine time and expenses for the vessel's
entering port shall be for Charterers' account, but any
time of detention and directly related and proven expenses
for quarantine due to pestilence, epidemics and illness of
Captain, Officers and crew shall be for Owners' account.

## Clause 38 :

### CARGO GEAR AND EQUIPMENTS

The vessel's cargo gear and other equipment shall
comply with the International regulations and/or

4

AUG. 11. 2008   3.43PM    LENNON, MURPHY & LENNON LLC                     NO. 0370   P. 21

requirements in effect at the port or ports of call,
canals and countries in which the vessel will be
employed. The Owners also guarantee that the vessel
shall be at all times in possession of a valid and
up-to-date certificate on board to comply with such
regulations and/or requirements. If stevedores,
longshoremen or other workmen are not permitted to
work by reason of any failure of the Captain, the
Owners and/or their Agents to comply with such
regulations or by reason that the vessel is not in
possession of such valid and up-to-date certificates,
then the Owners shall take immediate corrective
measures. The Charterers may suspend hire from time
lost thereby and any extra directly related and
fully documented expenses including stevedores'
standby shall be for Owners' account.

## Clause 39 :

### STEVEDORES

Charterers are not responsible for stevedore or other
damage to the vessel or her fittings unless the
Charterers or their Agents are notified in writing by
the Captain or the Owners' Agents within 48 hours of
occurrence of damage, except incase of hidden damage
which to be notified as soon as practicable after
discovered prior to redelivery.
Should stevedore damage be caused, Master is obliged
to try to let stevedores repair the damage and to try
to settle the matter directly with them in the first
stage. Failing this, Master will endeavour to obtain
signed acknowledgement of the damage and liability for
the same of the stevedores. Any stevedore damage
affecting seaworthiness, class, cargo worthiness to be
repaired before sailing for the port of occurrence at
the Charterers' expense and time. Other damages not
affecting seaworthiness/cargoworthiness to be reimbursed
by Charterers prior to vessel's redelivery at estimated
cost mutually agreed. Charterers to remain responsible
for settlement of stevedore damage whether or not payment
has been made by stevedores to the Charterers.

## Clause 40 :

### P & I CLUB

The Owners guarantee that the vessel shall be fully
covered by P & I Club. The Charterers have the benefit
of the Owners granted by the P & I Club as far as the
rules permit.
Charterers' P+I Club : "STEAMSHIP MUTUAL."

**Clause 41 :**

NYPE INTERCLUB AGREEMENT

Liability for cargo claims shall be borne by the
Owners and the Charterers in accordance with NYPE
Interclub Agreement of February 1970 as amended 1st
September 1996. However Charterers will not grant any
time extension to cargo interests or settle any cargo
claim without Owners' prior written consent and
approval which shall not be unreasonably withheld.

**Clause 42 :**

OWNERS' AGENTS

Charterers' Agents to attend Owners' routine matters without
charging additional agency fees, Owners to pay the actual
costs involved.

**Clause 43 :**

DEDUCTIONS

The Charterers shall be entitled to deduct from hire
payments any disbursements for the Owners' account
which is the actual amount supported by vouchers or
reasonably estimated amount and any previous
overpayments of hire including properly
substantiated and undisputed off-hire. The
Charterers also shall be entitled to deduct from last
hire payment estimated costs of bunkers on redelivery
and estimated Owners' account not exceeding USD
750 per port (but in case the last hire is not
sufficient, Charterers may deduct from the second to
the last hire payment) which to be settled within
three months after vessel's redelivery.

**Clause 44 :**

JOINT ON/OFF-HIRE SURVEY

Joint on/off-hire survey to be carried out at first load
respectively last discharge port each party to appoint
and pay for his own surveyor. Time for such surveys
to be shared equally between Owners and Charterers unless
simultaneously with vessel's operations in which case the
vessel to remain on hire. Owners /vessel may be represented
by Master / Chief Engineer.

Aug. 11. 2008  3:40PM    LENNON, MURPHY & LENNON LLC                    No. 0570   P. 29

Clause 45 :

#### REPLENISHMENT OF BUNKERS

Owners have the option to replenish bunkers at the redelivery port(s) at Owners' risk and expenses, provided this does not hinder Charterers' operation.

Clause 46 :

#### DEVIATION/PUT BACK

Should the vessel put back whilst on voyage by reason of breakdown of machinery, collision, stranding, fire or other accident or damage to the vessel, or drydocking or periodical survey, or deviate from the course of the voyage caused by sickness of or accident to the Captain, Officers, Crew or any person on board the vessel other than person travelling at the Charterers' request, or by reason of sending stowaway, salvage or by reason of the refusal of the Captain, Officers or Crew to do their duties without any specific and valid ground for rejection, or any Owners' matters unless caused by default of Charterers and/or their staff and/or their Agents, the payment of hire shall be suspended from the time of inefficiency in port or at sea until the vessel is again efficient in the same position or regains a point of progress equivalent to that the hire ceased hereunder. Bunkers consumed while the vessel is off-hire, and incurred during such period shall be for Owners' account.

Clause 47 :

#### CAPTURE/SEIZURE/ARREST

Should the vessel be captured or seizured or detained or arrested by any authority or by any legal process during the currency of this Charter Party for any reason attributable to the Owners, the payment of hire shall be suspended until the time of her release, in case vessel's operations are not affected then vessel to remain on hire. Any extra directly related and proven expenses incurred by and/or during such capture or seizure or detention or arrest shall be for Owners' account.

Clause 48 :
_____

SMUGGLING
_____

Any delay, expenses and/or fine incurred on account of
smuggling shall be for Owners' account if caused by
the Officers and/or crew, or shall be for Charterers'
account if caused by the Charterers' supercargo and/or
their staff or Agents.


Clause 49 :
_____

RETURN PREMIUM
_____

The Charterers shall have the benefit of any return
insurance premium receivable by the Owners from their
Underwriters as and when received for the Underwriters
by reason of the vessel being in port for a minimum
period of 30 days if on full hire for this period or
pro-rata for the time actually on hire, but Owners not
to be held responsible for any deficiency in speed /
consumption due to foul bottom as a result of
prolonged stay in port.


Clause 50 :
_____

HOLD CONDITION ON REDELIVERY
_____

The vessel shall be redelivered by the Charterers to
the Owners with clean swept holds. However, the
Charterers shall have the option to redeliver the
vessel with holds as they have been left by
stevedores, in consideration of which the Charterers
shall pay a lumpsum of U.S.$ 4,000.-- to the Owners.

INTERMEDIATE HOLD CLEANING:
Intermediate hold cleaning(s) shall, in Charterers' option be
performed by either the vessel's crew or by shore labour at
Charterers' time/expense. Charterers are to wash all holds
by fresh water immediately after completion of discharge and
thoroughly remove residues in holds at Charterers' time and
expenses to Master's satisfaction. If Charterers request
services of crew for intermediate cleaning then this cleaning
to be performed only whilst vessel is en route to next
loading port, provided the time of ballast leg is sufficient
for the work and the weather suitable, or at port provided
shore regulations permit. If this option is declared then
Charterers are to pay Owners USD400 per hold/ per occasion.

All intermediate cleaning, even if effected by crew, is
carried out at Charterers' risk and in Charterers' time, and

should vessel's holds be subsequently rejected and any further cleaning, etc., be required, then these expenses and time used always to be for Charterers' account. Any special equipment and/or materials/chemicals, etc., which may be required for hold cleaning are always to be provided and paid for by Charterers.

Clause 51 :
==========

GANGWAY WATCHMEN
=================

Expenses for gangway watchmen if ordered by the vessel to be for Owners' account, but if ordered by the Charterers or required by a port regulation, except in the case such watchmen are necessitated due to nationality or conduct of any of the ship's members, such expenses shall be for Charterers' account.

Clause 52 :
==========

ADDITIONAL EQUIPMENTS, FITTINGS
================================

The Charterers, subject to the Owners' prior approval, not to be unreasonably withheld, shall at liberty to fit/weld any additional equipment and fittings for loading, discharging and/or securing cargo. Such work shall be done at the Charterers' expense and time and the Charterers shall remove such equipment and fittings and restore the vessel to her original condition at their expense and time prior to redelivery, if Owners so request.

Clause 53 :
==========

Deleted.

Clause 54 :
==========

TAX
===

Any dues and/or taxes on vessel's cargo and/or freight and/or Charter Hire to be for Charterers' account. However any taxes on Charter Hire levied by country of vessel's flag, registry and/or Owners' principal place of business to be for Owners' account.

Clause 55 :
_____

## BALTIME 1939 WAR CLAUSE
_____

CONWARTIME 2004, General Paramount Clause, Both to
Blame Collision Clause, New Jason Clause, P+I
Bunkering Clause, as attached, is deemed to be
incorporated in this Charter and all Bill(s) of Lading
issued hereunder.


Clause 56 :
_____

## COMMUNICATION AND ENTERTAINMENT
_____

Charterers shall pay Owners a lumpsum of U.S.$.1,300.-
per month or pro-rata for all communication fees like
telephone, cable, telex, and all entertainment fees
for purpose of Charterers' business.


Clause 57 :
_____

Deleted.


Clause 58 :
_____

## I.T.F. CLAUSE
_____

Vessel's crew shall be covered at all time by an
I.T.F. agreement or bona fide trade union agreement
that is acceptable to the I.T.F. or its affiliates.
Any cost or loss of time due to Owners' failure to
comply with the above to be for Owners' account.


Clause 59 :
_____

## OIL POLLUTION
_____

Charterers shall bear no responsibility for all
consequences (including fines if any imposed to
Charterers) of oil and any time lost due to pollution
of oil or its consequences shall be deemed off-hire.

Should the vessel be delayed or detained due to
failure to comply with aforementioned, the Charterers
shall place the vessel off-hire for such time lost.

Clause 60 :

Export and/or import permits for cargo and trade to be
at Charterers' risk and expense. Taxation or levies in
respect of cargo and trade to be for Charterers'
account and to be paid by Charterers.

Clause 61 :

Vessel is a self trimming bulkcarrier, upper ends of
holds customarily excepted. For grain cargoes the
vessel complies with Chapter VI of Solas 1974 and has
dispensation from trimming ends as provided for IMCO
Paper BC XIX/INF.4 June 1978.

Clause 62 :

Deleted.

Clause 63 :

Deleted.

Clause 64 :

Deleted.

Clause 65 :

**HOLD CONDITION ON DELIVERY**

Owners warrant vessel's holds on delivery or Owners'
option prior to arrival at first loading port to be
cleaned, swept, dried and free from loose rust to the
satisfaction    of    approved/mutually    acceptable
Government and local inspectors in order to receive
Charterers' intended cargo. If vessel is rejected by
the said inspectors at loading port vessel will be
off-hire from the time of rejection until    holds
accepted by the said inspectors, however, time to
count pro rata for the number of holds accepted. In
case vessel can be used for part loading. In case of
dispute a mutually agreed independent surveyor to be
appointed and his decision to be binding. If vessel fails
inspection Owners have to start holds cleaning without
delay in order to meet with inspectors' requirements.

**Clause 66 :**
───────

Before and upon arrival at a port, vessel's Officers/
Crew to shape up vessel's hatches, cranes and gangway
in order to commence loading and/or discharging
without any delay. Opening/closing of all hatchcovers
shall be done by Officers/Crew, free of cost to
Charterers if allowed by shore regulations.

**Clause 67 :**
───────

Should Original Bills of Lading be unavailable at
port(s) of discharge, a Director of Charterers to sign
Owners' standard P & I Club Letter of Indemnity for
discharging of cargo without presentation of original
Bills of Lading to the Master.
Such Letter of Indemnity to be presented in fax to the
Owners, to Owners' representative office in Greece
prior to discharge of cargo. Such Letter of Indemnity
to be made null and void upon surrender of full set of
Original Bills of Lading to Owners/Owners' Agents.

**Clause 68 :**
───────

Within the context of this Charter party "good weather
conditions" are to be taken as wind speed not
exceeding Beaufort Force 4.
Evidence of weather conditions to be taken from
vessel's deck logs and independent government weather
reports. In the event of consistent discrepancy
between the deck log and the government weather
reports, Independent weather reports, are to be taken
as ruling for the weather evidence only.

**Clause 69 :**
───────

Master and crew shall co-operate with the Charterers,
Receivers or their representatives insofar as local
regulations permit to facilitate loading and
discharging operations.

**Clause 70 :**
───────

Owners are obliged to deliver the vessel with all
necessary and valid certificates such as (but not
limited to) international tonnage certificate,
deratisation certificate, safety and health
certificates, cargo handling gear certificate, safety

12

equipment certificate, all canal certificates, class certificates, untrimmed ends certificates and similar and all such certificates to be kept in valid condition by Owners throughout the period of the Charter.

**Clause 71 :**

Deleted.

**Clause 72 :**

In case of Charterers' or Owners' default, Owners or Charterers to give each other at least 72 hours written notice before exercising their respective rights under this Charter Party.

**Clause 73 :**

Deleted.

**Clause 74 :**

Time of delivery and redelivery to be based on G.M.T., but laydays/cancelling to be based on local time.

**Clause 75 :**

Deleted.

**Clause 76 :**

Deleted.

**Clause 77 :**

Vessel's constants including unpumpable ballast excluding fresh water is about 400 metric tons.

Aug. 11. 2008  5:40 M    Lehron, murphy & Lehnch LLO                    No. 0919   P. 30

Clause 78 :
=========
PAYMENT OF HIRE
================

A) Payment of hire shall be made by Charterers to :

   EFG-Eurobank Ergasias
   75 Akti Miaouli, 185 37 Piraeus, Greece
   Tel: 210 4284421 / Fax: 210 4283919

   Account No        : 0026.0029.22.1200040311
   In favour of      : Ocean Pride Company Limited
   Corresponding bank: Bankers Trust N.Y. USA
   Swift code        : EFGBGRAA

   Charterers on delivery to pay first hire together
   with the value of estimated bunkers to be consumed.


B) Evidence of receipt of funds by Owners' Bank shall
   constitute compliance of Charterers' obligations to
   pay hire.


C) Failing payment of full  hire  due  less  any
   specifically agreed amount, the Owners will have
   the right to withdraw the vessel without prejudice
   to any claim the Owners may have against the
   Charterers under this Charter. Further so long that
   the full hire due less any specifically agreed
   amount remains unpaid, Owners will be entitled to
   suspend the performance of any and all their
   obligations under this Charter Party, in port or at
   sea, and shall have no responsibility whatsoever
   for any direct or indirect consequences thereof in
   respect of which the Charterers hereby indemnify
   the Owners and hire shall continue from such
   suspension shall be for Charterers' account.


D) Where there is any failure to make "punctual and
   regular payment" due to over sight, negligence or
   error or omission of Charterers' or their Agents,
   employees or otherwise for any reason where there
   is absence of intention to fail to make payment as
   set out, Charterers shall be granted three (3)
   banking days grace to rectify the failure, after
   which delay, should condition of paragraph (B)
   above not be satisfied, provisions of paragraph (C)
   above would apply.

14

**Clause 79 :**
_____

Bunkers on delivery about 340/400 MTS IFO and about
90/130 MTS MDO.  Prices both ends: USD325.00 per MT
for IFO and USD635.00 per MT for MDO.  Charterers to
pay on delivery together with first hire payment value
of bunkers on delivery.  Same quantities/prices both
ends.    Bunker specifications:   IFO 180 CST RME 180
per ISO 8217 2005/E.  Marine Distillate Diesel Oil DMB
per ISO 8217 2005/E.  If not available then marine gas
oil DMA per ISO 8217 2005/E.


**Clause 80 :**
_____

**TRADING EXCLUSIONS**
_____

The only countries allowed under this Charter is South
America, always excluding Colombia.
Always excluded:
Amazon River not above but including Manaus,
River Uruguay not above but including Fray Bentos,
River Parana not above but including Matanzas,
Vessel not to sail via Cape Horn.

Ice and/or ice like areas: Vessel not to force ice, not
to follow ice breakers. War and/or warlike areas, where
any additional premium would be levied by Owners'
Underwriters or any places and/or territories under United
Nations sanctions  either presently in force or
subsequently imposed.


**Clause 81 :**
_____

Vessel's crew/Officers not to be employed as winchmen/
drivers of cargo gears.


**Clause 82 :**
_____

No direct sailing between North Korea - South Korea  /
South Korea - Taiwan nor vice-versa.


**Clause 83 :**
_____

Charterers' Bills of Lading to be used, if required by
Charterers and Charterers to indemnify Owners / Master
against all consequences / liabilities arising as a
result of signing such Bills of Lading.
Charterers or their representatives have authority to

AUg. 11. 2008  3:44/M    Lennon, Murphy & Lennon LLC                No. 5573   P. 38

sign Owners' Bills of Lading in conformity with Mate's
receipts.
Clean Mate's receipts to be signed for each parcel of
cargo when loaded on board. As and when requested by
Charterers Master to sign / release Bills of Lading
(or authorise agents / Charterers to sign / release)
in accordance with Mate's receipts.
Master to reject any cargo that would involve the
clausing of Mate's receipts and/or Bills of Lading.

### Clause 84 :

Charterers and/or their agents are hereby authorised
by Owners / Master to split Bills of Lading and issue
ship's delivery orders in negotiable and transferable
form against prior collection of full set of Original
Bills of Lading from Owners. Delivery orders to conform
with all terms and conditions and exceptions of Bills
of Lading and Charter Party and shall not prejudice
shipowners' rights.

### Clause 85 :

Bunker supplier / Charterers' Agents not to have the
right of arresting the vessel in case Charterers fail
to pay their invoice for their services rendered to
the vessel during the currency of this Charter Party.

### Clause 86 :

Should the dispute between Owners and Charterers not
exceed the sum of USD 50.000 excluding cost and
interest, both parties should refer the matter in
dispute to a sole arbitrator in accordance with the
L.M.A.A. Small Claims Procedure (2002).

### Clause 87 :

Taxes/dues on cargo/vessel/freight/hire(s)/freight(s) to be
for Charterers' account.

### Clause 88 :

If more than one Bill of Lading issued, Owners are not to
be responsible for each individual parcel of cargo discharged
and Owners to be only responsible for the total quantity
discharged.

**Clause 89 :**

Vessel to be left in seaworthy trim between loading/
discharging port(s).

**Clause 90 :**

No Liner/Through Bill(s) of Lading to be issued.
No transhipment allowed.

THE OWNERS                              THE CHARTERERS

**CONWARTIME 2004**

(a)  For the purpose of this Clause, the words:

(i)  "Owners" shall include the shipowners, bareboat
charterers, disponent owners, managers or other
operators who are charged with the management of the
Vessel, and the Master; and

(ii)  "War Risks" shall include any actual, threatened
or reported:

war; act of war; civil war; hostilities; revolution;
rebellion; civil commotion; warlike operations; laying
of mines; acts of piracy; acts of terrorists; acts of
hostility or malicious damage; blockades (whether
imposed against all vessels or imposed selectively
against vessels of certain flags or ownership, or
against certain cargoes or crews or otherwise
howsoever); by any person, body, terrorist or
political group, or the Government of any state

whatsoever, which, in the reasonable judgement of the
Master and/or the Owners, may be dangerous or are
likely to be or to become dangerous to the Vessel, her
cargo, crew or other persons on board the Vessel.

(b)   The Vessel, unless the written consent of the
Owners be first obtained, shall not be ordered to or
required to continue to or through, any port, place,
area or zone (whether of land or sea), or any waterway
or canal, where it appears that the Vessel, her cargo,
crew or other persons on board the Vessel, in the
reasonable judgement of the Master and/or the Owners,
may be, or are likely to be, exposed to War Risks.
Should the Vessel be within any such place as
aforesaid, which only becomes dangerous, or is likely
to be or to become dangerous, after her entry into it,
she shall be at liberty to leave it.

(c)   The Vessel shall not be required to load
contraband cargo, or to pass through any blockade,
whether such blockade be imposed on all vessels, or is
imposed selectively in any way whatsoever against
vessels of certain flags or ownership, or against
certain cargoes or crews or otherwise howsoever, or to
proceed to an area where she shall be subject, or is
likely to be subject to a belligerent's right of
search and/or confiscation.

(d)   (i) The Owners may effect war risks insurance in
respect of the Hull and Machinery of the Vessel and
their other interests (including, but not limited to,
loss of earnings and detention, the crew and their
protection and Indemnity Risks), and the premiums
and/or calls therefor shall be for their account.

(ii)   If the Underwriters of such insurance should
require payment of premiums and/or calls because,
pursuant to the Charterers' orders, the Vessel is
within, or is due to enter and remain within, or pass
through any area or areas which are specified by such
Underwriters as being subject to additional premiums
because of War Risks, then the actual premiums and/or
calls paid shall be reimbursed by the Charterers to
the Owners at the same time as the next payment of
hire is due, or upon redelivery, whichever occurs
first.

(e)   If the Owners become liable under the terms of
employment to pay to the crew any bonus or additional
wages in respect of sailing into an area which is
dangerous in the manner defined by the said terms,

18

then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(f) The Vessel shall have liberty:-

(i)    to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii)    to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the

Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v)    to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g)    If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such

19

notice  and  request,  the  Owners  may  discharge  the
cargo at any safe port of their  own choice.

(h)  If in compliance with any of the provisions of
sub-clauses (b) to (g) of this Clause anything is done
or not done, such shall not be deemed a deviation, but
shall be considered as due fulfilment of this Charter
Party.

* * * * * * * * * * * * *

## GENERAL PARAMOUNT CLAUSE

This Bill of Lading shall have effect subject to  the
provisions of any legislation relating to the carriage
of goods by sea which incorporates the rules relating
to Bills of Lading contained in the International
Convention, date Brussels 25th August 1924 and which
is compulsory applicable to the contract  of  carriage
herein contained. Such legislation shall be  deemed  a
surrender by the Carrier of any of its rights  or
Immunities  of  an  increase  of  any  of  its
responsibilities or liabilities thereunder. If any
term of this Bill of Lading be repugnant to any extent
to any legislation by this Clause incorporated,  such
terms shall be void to that extent but nor further.
Nothing in this Bills of Lading shall operate to limit
or deprive the Carrier of any Statutory protection  or
exemption from, or limitation of liability.

* * * * * * * * * *

## BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel
is involved while performing this Charter Party  fails
to be determined in accordance with the  Laws  of  the
United States of America, the following  Clause  shall
apply :

If the ship comes into collision with another ship  as
a result of the negligence of the other ship  and  any
act, neglect or default of the Master, mariner,  pilot
or their servants of the carrier in the navigation  or
in the management of the ship, the Owners of the goods
carried hereunder will indemnify the  carrier  against
all loss or liability to the other or non-carrying ship

20

or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set off recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships, or objects are at fault in respect of a collision or contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

* * * * * * *

### GENERAL AVERAGE AND NEW JASON CLAUSE

General Average shall be payable according to the York / Antwerp Rules, 1974, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply :

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the

goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

* * * * * *

## BIMCO STANDARD ISM CLAUSE

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and the "Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code.

Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or the "Company" to comply with the ISM Code shall be for Owners' account.

* * * * * * * * *

## BIMCO YEAR 2000 CLAUSE

Year 2000 conformity shall mean that neither performance nor functionality of computer systems, electric or electro-mechanical or similar equipment will be affected by dates prior to or during the year 2000.

Without prejudice to their other rights, obligations and defences under this Charter Party including, where applicable, those of the Hague or Hague-Visby rules, the Owners and the Charterers, shall exercise due diligence in ensuring year 2000 conformity in so far as this has a bearing to this Charter Party.

22

Aug. 11. 2009  3:47PM   Lennon, Murphy & Lennon LLC              No. 0570   P. 40

## ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(a)(i) The Owners shall comply with the requirements
of the International Code for the Security of Ships
and of Port Facilities and the relevant amendments to
Chapter XI of SOLAS (ISPS Code) relating to the Vessel
and "the Company" (as defined by the ISPS Code). If
trading to or from the United States or passing
through United States waters, the Owners shall also
comply with the requirements of the US Maritime
Transportation Security Act 2002 (MTSA) relating to
the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the
Charterers with a copy of the relevant International
Ship  Security  Certificate  (or  the  Interim
International Ship Security Certificate) and the full
style contact details of the Company Security Officer
(CSO).

(iii) Loss, damages, expense or delay (excluding
consequential loss, damages, expense or delay) caused
by failure on the part of the Owners or "the
Company"/"Owner" to comply with the requirements of
the ISPS Code/MTSA or this Clause shall be for the
Owners' account, except as otherwise provided in this
Charter Party.

(b)(i) The Charterers shall provide the Owners and the
Master with their full style contact details and, upon
request, any other information the Owners require to
comply with the ISPS Code/MTSA. Where sub-letting is
permitted under the terms of this Charter Party, the
Charterers shall ensure that the contact details of
all sub-charterers are likewise provided to the Owners
and the Master. Furthermore, the Charterers shall
ensure that all sub-charter parties they enter into
during the period of this Charter Party contain the
following provision:

"The Charterers shall provide the Owners with their
full style contact details and, where sub-letting is
permitted under the terms of the charter party, shall
ensure that the contact details of all sub-charterers
are likewise provided to the Owners".

(ii) Loss, damages, expense or delay (excluding
consequential loss, damages, expense or delay) caused
by failure on the part of the Charterers to comply
with this Clause shall be for the Charterers' account,
except as otherwise provided in this Charter Party.

(c) Notwithstanding anything else contained in this
Charter Party all delay, costs or expenses whatsoever
arising out of or related to security regulations or
measures required by the port facility or any relevant
authority in accordance with the ISPS Code/MTSA
including, but not limited to, security guards, launch
services, vessel escorts, security fees or taxes and
inspections, shall be for the Charterers' account,
unless such costs or expenses result solely from the
negligence of the Owners, Master or crew. All measures
required by the Owners to comply with the Ship
Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the
other party's account according to this Clause, the
other party shall indemnify the paying party.

### Bunker Fuel Sulphur Content Clause for Time Charter Parties 2005

(a) Without prejudice to anything else contained in
this Charter Party, the Charterers shall supply fuels
of such specifications and grades to permit the
Vessel, at all times, to comply with the maximum
sulphur content requirements of any emission control
zone when the Vessel is ordered to trade within that
zone.

The Charterers also warrant that any bunker suppliers,
bunker craft operators and bunker surveyors used by
the Charterers to supply such fuels shall comply with
Regulations 14 and 18 of MARPOL Annex VI, including
the Guidelines in respect of sampling and the
provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold
harmless the Owners in respect of any loss, liability,
delay, fines, costs or expenses arising or resulting
from the Charterers' failure to comply with this Sub-
clause (a).

(b) Provided always that the Charterers have fulfilled
their obligations in respect of the supply of fuels in
accordance with Sub-clause (a), the Owners warrant
that:

(i) the Vessel shall comply with Regulations 14 and 18
of MARPOL Annex VI and with the requirements of any
emission control zone; and
(ii) the Vessel shall be able to consume fuels of the
required sulphur content

when ordered by the Charterers to trade within any
such zone.

Subject to having supplied the Vessel with fuels in
accordance with Sub-clause (a), the Charterers shall
not otherwise be liable for any loss, delay, fines,
costs or expenses arising or resulting from the
Vessel's failure to comply with Regulations 14 and 18
of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control
zone" shall mean zones as stipulated in MARPOL Annex
VI and/or zones regulated by regional and/or national
authorities such as, but not limited to, the EU and
the US Environmental Protection Agency.

\* \* \* \* \* \* \* \* \* \*

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

OCEAN PRIDE CO. LTD.                           :        08 CV _____
                                               :
            Plaintiff,                         :        ECF CASE
                                               :
    - against -                                :
                                               :
WORTHINGTON SHIPPING CORPORATION               :
a/k/a WORTHINGTON BULK LIMITED                 :
                                               :
            Defendant.                         :
----------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )    ss: SOUTHPORT
County of Fairfield   )

    Anne C. LeVasseur, being duly sworn, deposes and says:

    1.    I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

    2.    I have attempted to locate the Defendant, WORTHINGTON SHIPPING

CORPORATION a/k/a WORTHINGTON BULK LIMITED within this District. As part of my

investigation to locate the Defendant within this District, I checked the telephone company

information directory, as well as the white and yellow pages for New York listed on the Internet

or World Wide Web, and did not find any listing for the Defendant. Finally, I checked the New

York State Department of Corporations' online database which showed no listings or registration

for the Defendant.

3.  I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.  Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.  This is Plaintiff's first request for this relief made to any Court.

### PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.  Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7.  Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

8.  To the extent that this application for an Order appointing a special process server

-2-

with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.      Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.     Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

—3—

Dated:       August 11, 2008
             Southport, CT


_____
Anne C. LeVasseur


Sworn and subscribed to before me
this 11 day of August, 2008


_____
Notary Public/ Commissioner of the
Superior Court

-4-